Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Nelson A. Campbell (SBN 357579)
ncampbell@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB ANGEL HIGGINS p/k/a "JAKE ANGEL BEATS," an individual;<br><br>Plaintiff,<br><br>v.<br><br>HERBERT LAMONT CLEMONS, an individual; LEVI BLOOM, an individual; EMPIRE DISTRIBUTION, INC., a California corporation; and DOES 1-10,<br><br>Defendants. | Case No. 2:26-cv-11102<br><br>COMPLAINT FOR:<br>1. DIRECT COPYRIGHT INFRINGEMENT<br>2. VICARIOUS COPYRIGHT INFRINGEMENT<br>3. BREACH OF CONTRACT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Jacob Angel Higgins p/k/a "Jake Angel Beats" ("Angel"), through his undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

**Jurisdiction & Venue**

1. This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c), 1400(a).

**Parties**

4. Plaintiff Angel is an individual residing in Nashville, Tennessee. Angel is a music producer who composes, records, and licenses instrumental works under the professional name "Jake Angel Beats."

5. Upon information and belief, Defendant Herbert Lamont Clemons resides or does business in and with California and this judicial district. Clemons has written agreements regarding ownership and exploitation of *Make It Out Alive* with entities located in this state. Clemons is Levi Bloom's manager.

6. Upon information and belief, Defendant Levi Bloom resides or does business in and with California and this judicial district. Bloom has agreements regarding ownership and exploitation of *Make It Out Alive* with entities or individuals located in this state and judicial district.

7. Upon information and belief, Bloom owns and/or controls, in whole or in part, exclusive rights in *Make It Out Alive*. Bloom is an author of *Make It Out Alive*. Bloom has offered for sale or download, sold, preproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized licensed any/all of the foregoing) *Make It Out Alive*; and has earned revenues and profits generated in connection with the same since the release of *Make It Out Alive*.

8. Upon information and belief, Defendant Empire Distribution, Inc. is a California corporation with a principal place of business located at 235 Pine Street, 24th

Floor, San Francisco, CA 94104. Empire has written agreements regarding ownership and exploitation of *Make It Out Alive*.

9. Upon information and belief, Empire owns and/or controls, in whole or in part, exclusive rights in *Make It Out Alive*. Empire is a distributor and/or administrator of the sound recording of *Make It Out Alive*. Empire has offered for sale or download, sold, preproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized licensed any/all of the foregoing) *Make It Out Alive*; and has earned revenues and profits generated in connection with the same since the release of *Make It Out Alive*.

10. Defendants Does 1-10 are other parties not yet identified who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual, or otherwise, of Defendants Does 1-10 are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

11. Upon information and belief, at all relevant times, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in, subsequently ratified, and/or adopted each and all of the acts or conduct alleged, with full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## **Factual Background**

12. Angel is a music producer who created and owns the work entitled *Red Dead*.

13. *Red Dead* was completed in 2025 and first published on August 3, 2025.

14. *Red Dead* has been duly registered with the Copyright Office.

15. Prior to the acts complained of herein, Angel published and widely publicly disseminated *Red Dead* including without limitation on his social media pages and on his website and webpages.

16. On or about January 4, 2026, Clemons purchased a non-exclusive license to use *Red Dead* in one new song in exchange for, *inter alia*, "fifty percent (50%) of all gross master royalties and sound recording income generated by the New Song [including] without limitation, revenues derived from digital streaming, downloads, sales, and any other form of exploitation of the sound recording embodying [*Red Dead*.]" ("License"). The License also states that Angel shall retain 50% of writers' share of the new song's underlying composition and that the licensee does not own the master or the sound recording rights in the new song.

17. Angel performed at all times under that License.

18. After the License was entered into, Clemons sought to obtain an exclusive license for use of Red Dead.

19. Angel and Clemons did not reach an agreement for an exclusive license of *Red Dead*, and Clemons repudiated the agreed-upon split of royalties agreed upon in the License.

20. On or about January 8, 2026, Bloom released *Make It Out Alive*.

21. The composition and sound recording of *Make It Out Alive* incorporate *Red Dead* throughout the runtime of the work as the primary instrumental track.

22. On or about June 22, 2026, Angel sent a notice of breach to Clemons. Clemons failed to respond or otherwise remedy the breach.

23. Per the terms of the License, the License was terminated on June 29, 2026.

24. Since the License was terminated, Bloom, Clemons, and Empire have exploited *Make It Out Alive*, which prominently incorporates *Red Dead*, without license or consent from Angel.

25. To date, Angel has not received any royalty payments due under the License.

26. Defendants each continue to exploit and receive monies from *Make It Out Alive*, in violation of Angel's copyrights in *Red Dead* and his rights under his agreement with Clemons.

**FIRST CLAIM FOR RELIEF**

*(For Copyright Infringement—Against all Defendants, and Each)*

27. Angel repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Complaint.

28. Angel is the creator and owner of *Red Dead* and its copyrights.

29. *Red Dead* is registered with the U.S. Copyright Office.

30. *Red Dead* is an original composition and recording.

31. Defendants had access to *Red Dead* because it was published and widely publicly disseminated including without limitation on Angel's social media pages and on his website and webpages since August 2025. Defendants also had access through Clemons who contracted with Angel regarding licensing *Red Dead*.

32. On information and belief, Defendants' copying establishes access by way of striking similarity.

33. Defendants, and each of them, have engaged and continue to engage in the unauthorized reproduction, distribution, public performance, licensing, and creation (or authorized or licensed any/all of the foregoing) of *Make It Out Alive*. The foregoing acts infringe Angel's rights under the Copyright Act. Such exploitation includes, without limitation, Defendants', and each of them, distributing and broadcasting *Make It Out Alive* on streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube.

34. Due to Defendants', and each of their acts of infringement, Angel has suffered actual, general, and special damages in an amount to be established at trial, including but not limited a reasonable license fee for Defendants' use of the sound recording and composition, respectively.

35. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Angel's rights in Angel's copyrighted work. As such, Angel is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringements of Angel's rights in an amount to be established at trial.

36. Angel is informed and believes and thereon alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Within the time permitted by law, Angel will make his election between actual damages and statutory damages.

## SECOND CLAIM FOR RELIEF

*(For Vicarious Copyright Infringement - Against All Defendants, and Each)*

37. Angel repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

38. Upon information and belief, the third parties to whom Defendants, and each of them, distributed and/or authorized the distribution of *Make It Out Alive* have further reproduced, distributed, adapted, and/or publicly performed *Make It Out Alive*, and continue to do so, without Angel's authorization—e.g., the third-party digital music streaming and subscription services streaming *Make It Out Alive* (e.g., Spotify, Apple Music, Amazon, and Pandora etc.) directly infringe Angel's public performance right in *Red Dead* by doing so.

39. On information and belief, Defendants, and each of them, have the right and ability to supervise or control those third parties' directly infringing activities. Defendants, and each of them, distributed and/or authorized the distribution of *Make It Out Alive* to third parties pursuant to licensing or other agreements with those third

parties that grant Defendants, and each of them, the right and ability to supervise or control those third parties' further reproduction, distribution, adaptation, and/or public performance of *Make It Out Alive* —e.g., under those agreements, upon demand by any Defendant, and/or their representatives, the third-party digital music streaming and subscription services must cease and desist from streaming, or otherwise remove, disable, or limit users' access to, *Make It Out Alive*.

40. On information and belief, Defendants, and each of them, directly and substantially financially benefit from those third parties further reproducing, distributing, adapting, and/or publicly performing *Make It Out Alive* pursuant to the licensing or other agreements between them—e.g., under their agreements with the third-party digital music streaming and subscription services, Defendants, and each of them, earn a share of the revenue produced by, and thus profits from, each and every stream of *Make It Out Alive* by and/or on those third-party digital music streaming and subscription services.

41. Upon information and belief, Defendants, and each of them, have nevertheless failed to exercise their right and ability to supervise or control those third parties' directly infringing activities, namely, to stop or limit the further reproduction, distribution, adaptation, and/or public performance of *Make It Out Alive* by those third parties—e.g., each Defendant has failed to demand that the third-party digital music streaming and subscription services cease and desist from streaming, or otherwise remove, disable, or limit users' access to, *Make It Out Alive*, and instead has continued to directly and substantially financially benefit from those third-party digital music streaming and subscription services streaming *Make It Out Alive* and thus directly infringing Angel's public performance right in *Red Dead*.

42. This renders Defendants, and each of them, vicariously liable for the direct infringement of those third parties.

43. Due to Defendants', and each of their, acts of vicarious copyright infringement, Angel has suffered damages in an amount to be established at trial.

44. Due to Defendants', and each of their, acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Angel's rights in *Red Dead*. As such, Angel is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Angel's rights in *Red Dead*, in an amount to be established at trial.

45. Angel is informed and believes and thereon alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement. Within the time permitted by law, Angel will make his election between actual damages and statutory damages.

## <u>**THIRD CLAIM FOR RELIEF**</u>

*(For Breach of Contract – Against Herbert Lamont Clemons.)*

46. Angel repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

47. Clemons purchased a non-exclusive license to use Red Dead in one new song in exchange for, inter alia, "fifty percent (50%) of all gross master royalties and sound recording income generated by the New Song [including] without limitation, revenues derived from digital streaming, downloads, sales, and any other form of exploitation of the sound recording embodying [Red Dead.]" ("License"). The License also states that Angel shall retain 50% of writers' share of the new song's underlying composition and that the licensee does not own the master or the sound recording rights in the new song.

48. Angel performed at all times under that License.

49. After the License was entered into, Clemons sought to obtain an exclusive license for use of Red Dead.

50. Angel and Clemons did not reach an agreement for an exclusive license of Red Dead, and Clemons repudiated the agreed-upon spilt of royalties agreed upon in the License.

51. To date, Angel has not received any royalty payments due under the License.

52. Due to Clemons's breach, Angel has suffered damages in an amount to be established at trial.

**<u>Prayer for Relief</u>**

*(Against All Defendants)*

With Respect to Each Claim for Relief, Plaintiff demands judgment against Defendants as follows:

a. For a constructive trust to be entered over any recordings, video reproductions, files, online programs, and other material in connection with *Red Dead* and all revenues resulting from the exploitation of same, for the benefit of the Plaintiff;
b. That the Court order an accounting of all revenues derived from the exploitation of *Red Dead*;
c. That Plaintiff be awarded all profits of Defendants, and each, plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial;
d. That Angel be awarded statutory damages and attorneys' fees as available under 17 U.S.C. § 505;
e. That Defendants pay damages equal to Plaintiff's actual damages and lost profits;
f. That Plaintiff be awarded pre-judgment interest as allowed by law;
g. That Plaintiff be awarded the costs and attorneys' fees of this action; and
h. That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: September 25, 2026

By: *<u>/s/ Scott Alan Burroughs</u>*
Scott Alan Burroughs, Esq.
Nelson A. Campbell, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff*